ASSOCIATED CREDIT COMPANY *v.* LAWRENCE NOGIC
ET AL.

CIRCUIT COURT

SIXTH CIRCUIT
FILE NO. CV 6-702-45346

Memorandum filed May 16, 1974

*Alvin M. Murray,* of New Haven, for the plaintiff.

*Francis X. Dineen,* of New Haven, for the defendants.

BURNS, J. This is an action in which the plaintiff, as assignee, seeks judgment against the defendants, as makers, on a note, alleging that the note was given to the plaintiff's assignor pursuant to a home solicitation sale and remains fully unpaid. The defendants in answer denied several of the allegations of the plaintiff's bill of particulars, offered

nine special defenses, and interposed a counterclaim for a penalty under the federal Consumer Credit Protection Act (15 U.S.C. § 1640 [1970]) and Federal Reserve Board "Regulation Z" promulgated thereunder. See 12 C.F.R., pt. 226.

The court, having heard the parties on the issues, finds the following: On October 28, 1969, the defendants, as buyers, and Holiday Food Company, Inc., hereinafter called Holiday, as seller, entered into an agreement for the sale of an upright freezer and a "Jumbo Pack" food program. This agreement was based on a home solicitation sale, as that term was defined and regulated by the Home Solicitation Sales Act, chapter 740 of the General Statutes, as amended by Public Acts 1969, No. 178.

The agreement stated separately the price and method of payment for the freezer and the price and method of payment for the food program, and the parties executed one note, on paper of the Tradesmen's National Bank, providing for payment of the freezer, and another note providing for payment, at the office of the plaintiff, for the food program. Each note bore the notation, "This instrument is based upon a home solicitation sale, which sale is subject to the provisions of the Home Solicitation Sales Act. This instrument is not negotiable." Both the freezer and the food were received by the defendants, who retained the former and consumed the latter. The note executed in payment for the food program was assigned by Holiday to the plaintiff and is the subject of this litigation.

Of the nine special defenses by the defendants, only the first need be considered, since it is dispositive of the plaintiff's claim, i.e., that the note is subject to all claims and defenses which the defendants might have against Holiday, that the note was based on a home solicitation sale, and that the agree-

ment on which the sale was based was void and of no effect because it failed to contain the wording required by § 42-135 of the General Statutes.

On October 1, 1969, No. 178 of the 1969 Public Acts took effect, § 1 of which amended § 42-135 of the General Statutes and was applicable to the agreement entered into by the defendants. Section 1 provided that no agreement of the buyer in a home solicitation sale shall be effective unless it is signed and dated by the buyer and unless it contains a conspicuous notice in ten-point bold-face type or larger directly above the space reserved in the agreement for the signature of the buyer, which notice was set forth in the statute.

The agreement signed by Holiday and the defendants contained, directly above the signatures of the buyers, a notice which differed in three respects from the notice provided for in the statute. First, the notice was not in bold-face type, although certain other provisions of the agreement were in this distinctive typeface. Second, subdivision (5) of the notice as set forth in the statute stated that the buyer could cancel the agreement by notice by certified mail posted not later than midnight of the third calendar day after the day on which the buyer signed the agreement, except that, if the signing was on Friday, Saturday, or Sunday, the cancelation was to be posted not later than midnight of the Wednesday immediately following; the notice in the agreement, however, stated that cancelation could be effected by notice posted not later than midnight of the calendar day on which the buyer signed the agreement, except that, if the signing was on Friday, Saturday, or Sunday, the cancelation was to be posted no later than midnight of the Monday immediately following. Third, the notice set forth in the agreement then added, "such action will

result in a service charge"—language which was not included in the statutory notice and apparently was a veiled reference to the modest cancelation fee authorized by § 42-138 of the General Statutes.

"[I]t has become increasingly clear that the policy of our state is to protect purchasers of consumer goods from the impositions of overreaching sellers." *Fairfield Credit Corporation* v. *Donnelly,* 158 Conn. 543, 550. The enactment of the Home Solicitation Sales Act in 1967 and of the liberalizing amendment of 1969 was evidence of legislative concern for the protection of consumers from high-pressure sales tactics, and the thrust of §§ 42-135 and 42-137 of the act was to provide a "cooling-off period"— originally twenty-four hours and, after October 1, 1969, seventy-two hours—within which the buyer could cancel an agreement which, on reflection, he might find inadvisable for him; further, the buyer was to be clearly put on notice of this right so that he could take advantage of it. To reinforce this protection, the legislature provided in § 42-135 that "[n]o agreement of the buyer in a home solicitation sale shall be effective" unless it contains, in the prescribed typeface, the notice expressly set forth in the statute.

The court has found no case wherein the failure of a home solicitation sales agreement to follow the statutory requirement concerning the setting forth of the notice in the agreement has been in issue. The plaintiff urged that such failure renders the agreement merely voidable and has cited *Keyes* v. *Brown,* 155 Conn. 469, as authority that the defendants, in order to cancel their obligation, should have rescinded the contract, first offering to restore the seller to its former condition by returning the food. *Keyes* v. *Brown* was an action on a retail instalment sales contract, regulated by chapter 733 of the Gen-

eral Statutes, and the effect of the failure of such a contract to satisfy all the requirements of § 42-84 of that chapter was not set forth by the legislature but was established by judicial construction as rendering the contract voidable.

Where the language of a statute is clear and unambiguous, there is no room for construction. *Meriden* v. *Board of Tax Review,* 161 Conn. 396, 402. In the Home Solicitation Sales Act, the General Assembly clearly stated in § 42-135 that no agreement subject to the act "shall be effective" unless it contains the notice which is set forth in the statute. "Effective," as defined in Ballentine, Law Dictionary (3d Ed.), means "in force; in effect." An agreement which is not effective is not in force, not in effect. A voidable contract, on the other hand, is one which, although defective, so that it can be avoided by one of the parties, is valid and binding until it is avoided by a disaffirmance. 1 Williston, Contracts (3d Ed.) § 15; Restatement, 1 Contracts § 13. The prescribed form of notice in this instance was mandatory, and the failure of the seller to comply with it rendered the agreement not merely voidable but ineffective, not in force.

Under § 42-136 of the General Statutes, the transfer of any note or other evidence of indebtedness given by a buyer in a home solicitation sale shall be deemed an assignment only, and any right, title or interest which the transferee may acquire thereby shall be subject to all claims and defenses of the buyer against the seller arising under the provisions of the Home Solicitation Sales Act. The plaintiff, being the transferee of Holiday's right, title and interest in the sale, is subject to all claims and defenses which the defendants had under the act, including the claim that the agreement was not effective because of the failure to comply with the notice

requirements of the act. As Holiday could not enforce the agreement and the note against the defendants, Holiday's transferee, the plaintiff, cannot. That the effect of such a finding results in the defendants' having received and consumed food for which they cannot be required to pay in an action on the contract and note cannot be a concern of the court. Where a statute is explicit, equities or inequities following its application are not a proper subject for judicial intervention. *State ex rel. Kirby* v. *Board of Fire Commissioners,* 129 Conn. 419, 424. Indeed, such a result reinforces the concern of the legislature for the protection of the consumer in this kind of sales transaction. The plaintiff's remedy, if any, must be found in a different cause of action.

The defendants have counterclaimed for a penalty pursuant to the Consumer Credit Protection Act (16 U.S.C. § 1640 [1970]), alleging the failure of the documents in the transaction to make the disclosures required by regulation Z. Consumer credit, as defined by regulation Z, means credit offered or extended for which a finance charge is or may be imposed or which, pursuant to an agreement, is or may be repayable in more than four instalments. 12 C.F.R. § 226.2 (k). The extension of credit with respect to the food program agreement provided for payment of the amount due in four instalments and imposed no finance charge; these facts remove the transaction from the definition of consumer credit. The extension of credit with respect to the sale of the freezer—a sale for which a separate instalment note was executed, and the provisions of which were separately stated in the sales agreement—provided for a finance charge and for payment in thirty-six instalments. The defendants claim that the documents must be read together and that any failure to observe the requirements of the Consumer Credit

Protection Act with respect to the financing of the freezer sale is imputed to the extension of credit with respect to the food. The sales agreement provided separately for the sale and financing of the freezer and the sale and financing of the food. Separate notes were executed with respect to each transaction. The court finds the sales agreement divisible as to the items sold and will not impute any deficiencies in the finance paper with respect to the freezer to the finance paper with respect to the food.

Accordingly, judgment may enter for the defendants on the complaint and for the plaintiff on the counterclaim.